IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

## MIDDLE DIVISION.

*(Nashville.* December Term, 1919.)

BEWLY-DARST COAL CO *v.* CHATTANOOGA GAS CO.

*(Nashville.* December Term, 1919.)

1. **SALES.** A second contract for delivery of coal held an entirely new agreement.

Where an original contract for delivery of 6,000 tons of coal in monthly installments for five months from April 1, 1917, which contained a strike clause, expired without delivery of the coal because of the strike in the mine, and thereafter the parties entered into another agreement for delivery of the balance of coal at a less price, *held* that the second agreement was an entirely separate contract. (*Post, pp.* 463, 464.)

2. **WAR.** A contract of sale of coal in excess of price fixed by proclamation is valid, but only for price proclaimed.

On August 21, 1917, the President under the Lever Act (U. S. Comp. St. 1918, Comp. St. Ann. Supp. 1919, sections 3115⅛e-3115⅛kk, 3115⅛l-3115⅛r) fixed the price of coal at $2.80 a ton; thereafter complainant, who because of strike had failed to deliver all of the coal called for in previous contract, agreed to deliver

the balance at $3.25 per ton, instead of the old price of $4, and on December 3, 1917, the Fuel Administration raised the price to $3.50 per ton; *held* that, while the second contract was valid, no amount in excess of the governmental price fixed between August and December can be collected. (*Post*, *pp.* 464, 465.)

S. WAR. Increase in governmental price will not warrant collection in excess of price fixed by coal contract.

Where a contract fixed the price of coal at $3.25 per ton, the fact that the Fuel Administration, operating under the Lever Act (U. S. Comp. St. 1918, Comp. St. Ann. Supp. 1919, sections 3115⅛e-3115⅛kk, 3115⅛l-3115⅛r), thereafter raised the pre-existing price of $2.80 to $3.50 a ton will not warrant the seller in collecting $3.50 after the increase, but he is restricted to the contract price. (*Post*, *p.* 465.)

FROM HAMILTON.

Appeal from the Chancery Court of Hamilton County. —Hon. W. B. GARVIN, Chancellor.

S. J. McALLESTER and LINDSAY, YOUNG & YOUNG, for appellant.

WILLIAMS & LANCASTER, for appellees.

MR. JUSTICE GREEN delivered the opinion of the Court.

The complainant was a coal broker representing as sales agent a certain mine in the La Follette district. In April, 1917 it entered into a contract with the defendant, Chattanooga Gas Company, whereby it undertook to deliver to defendant 6,000 tons of coal in installments about equally for the five months following April 1, 1917, at four dollars per ton.

There was a strike clause in the contract, and during the early part of August there was a strike of the miners in the La Follette section, which closed the

mine represented by the complainant. The strike continued until after September 1st, when by its terms the contract expired. At the time of the strike there remained undelivered on account of this contract 2,844.75 tons of coal.

By October the strike was adjusted, and during that month the parties entered into another agreement by correspondence, whereby the complainant undertook to deliver the balance of coal due on the original contract, namely, 2,844.75 tons of $3.25 per ton. Delivery was to be made at the average rate of one car daily. One car of coal is approximately forty tons, and the time contemplated for the performance of this last agreement was therefore about seventy days, or something over two months.

On August 10, 1917, a food and fuel measure enacted by Congress, generally known as the Lever Act (U. S. Comp. St. 1918, Comp. St. Ann. Supp. 1919, sections 3115⅛e-3115⅛kk, 3115⅛1-3115⅛r) became a law. Under the terms of this act the President was authorized to fix the price of coal, and by a proclamation issued on August 21, 1917, the President did fix the price to be charged by dealers for coal of the character here involved in this district at $2.80 per ton. This price was provisional on the face of the proclamation, and intended to be in effect pending further investigation and until the Fuel Administration was better organized.

The price so fixed on such coal for this district remained at $2.80 per ton until October 29, 1917. The Fuel Administration then raised the price of such coal in this district to $3.25 per ton. The latter price re-

mained in effect until December 3, 1917, when the Fuel Administration again raised the price of this coal in this district to $3.50 per ton.

So that the lawful price of coal of this character was $2.80 per ton in October when this contract for the undelivered balance at $3.25 was entered into between the parties. From October 29, until December 3, 1917, the lawful price of coal was $3.25 per ton, and from December 3, 1917, to January 1, 1918, the lawful price of this coal in this district was $3.50 a ton.

The time required for the delivery of the 2,844.75 tons of coal, under the supplemental contract, spread over the three periods above mentioned.

. Under these circumstances, and adjusting the account between the parties, the chancellor allowed the complainant to recover $2.80 per ton on all coal delivered by it under the last contract up to October 29, 1917, and to recover $3.25 for the remainder of the coal so delivered. Both parties were dissatisfied with the chancellor's decree, and both have appealed, but we think the chancellor was right.

On behalf of the complainant it is contended that the supplemental agreement made between the parties in October for the delivery of the remainder of the coal due under the original contract was but a continuation of that original contract. The Lever Act does not undertake to interfere with prices fixed in coal contracts entered into before its passage. It is argued that the agreement upon which complainant sues is in reality a contract made prior to Lever Act, and is not affected by that statute.

We cannot agree to this. We think the agreement entered into in October was essentially a new contract. Both parties had been discharged from the old contract. The complainant was discharged by the expiration of the time for performance, and in turn was excused from performance by the strike clause written into the original contract. The defendant was discharged from the original contract, because of the complainant's failure to deliver. Moreover, the contract in October provided for the delivery of coal at $3.25 per ton, instead of $4 per ton, as stipulated in the old contract. So we think there was a new contract and a new consideration with respect to the undelivered balance of 2,284.75 tons.

At the time this new contract was entered into the lawful price of coal was $2.80 per ton, and defendant contends no more should be allowed for any of the coal shipped.

No disposition can be made of this case on the theory that the new contract was illegal, by reason of the pleadings. The complainant sues on the contract, and the defendant in its answer admits that the contract was lawful in all respects, save as to the price stipulated.

We must therefore treat the contract as lawful. The proclamation of the President, however, fixing the price of coal was made under authority of the act of Congress referred to, and the proclamation and the act were the law of the land.

We, therefore, deal with the contract as we would, for instance, with an insurance policy, some of the provisions of which conflict with the insurance statutes. We read the law into the contract as a part thereof.

The price fixed by the contract will be enforced in so far as it does not conflict with the price fixed by law.

For so much of the coal as was delivered up to October 29, 1917, only $2.80 per ton can be collected. That was the price fixed by law during this period, and the law overrides the stipulation for $3.25 per ton.

From October 29, 1917, until December 3, 1917, $3.25 per ton can be collected, because that identical price had been fixed by the fuel Administration for this period, and was therefore lawful.

On December 3, 1917, the Fuel Administration fixed the price of this grade of coal at $3.50 per ton, and a considerable quantity of the coal called for by the new contract was delivered after this date. It does not follow, though, that the coal company can collect that sum for the reason that under the Lever Act the Fuel Administration was only authorized to fix the maximum price of coal, and was not empowered to deprive parties of the right to contract for coal at a lower price. The contract before us being treated as valid, the price therein fixed must control in so far as it does not exceed the price fixed by the Fuel Administration.

It results that the chancellor's decree will be in all things affirmed, and the costs of this cause divided between the parties.